UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:21-cv-04043-MCS-JPR | Date April 6, 2022 |
| Title *David Marks v. UMG Recordings, Inc.* | |

Present: The Honorable **Mark C. Scarsi, United States District Judge**

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING MOTION TO DISMISS (ECF NO. 30)

Following the Court's order granting Defendant UMG Recordings, Inc.'s motion to dismiss, Order, ECF No. 21, Defendants UMG and Capitol Records, LLC move to dismiss Plaintiff David Marks's Second Amended Complaint, Mot., ECF No. 30. Plaintiff opposed the motion, Opp'n, ECF No. 34, and Defendants filed a reply, Reply, ECF No. 35. The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

**I.  BACKGROUND**

Plaintiff David Marks, a former member of The Beach Boys, brings this class action to recover unreceived digital streaming royalties on behalf of himself and other people and entities who have royalty contracts with UMG and Capitol Records. SAC ¶¶ 8, 40–41, ECF No. 25.

Plaintiff entered into an agreement with Capitol Records, Inc., a predecessor to Capitol Records, LLC, on July 16, 1962, entitling The Beach Boys to a royalty applicable to records manufactured from the masters recorded by the group. *Id.* ¶ 22. Section 7.b of this agreement provides that "[a]s to records sold outside the United States of America, . . . royalties expressed in percent will be based on the list price

per record for retail sales in the country of manufacture." *Id.* ¶ 22 n.7 (first alteration in original). Following Plaintiff's dissociation from The Beach Boys and subsequent litigation, Plaintiff signed a 1972 Settlement Agreement that states "[a]s to records manufactured outside the USA . . . [o]nly records for which payment is received by Capitol in the United States of America shall be deemed sold" and thus generate royalties. *Id.* ¶ 23 n.9 (alterations in original). These agreements, mentioning physical records, did not anticipate the shift in the music industry from consumers buying records to consumers digitally streaming songs. *Id.* ¶ 25. Defendants represented to Plaintiff and class members on written royalty statements that Plaintiff and class members would receive royalty payments for the digital streaming of their music. *Id.* ¶ 26. Defendants allegedly failed to disclose the full extent of foreign royalties derived from streaming and made arbitrary deductions. *Id.* ¶¶ 27–28. Defendants purportedly enacted this "scheme" by having foreign subsidiaries take a portion of the royalties and only reporting the foreign royalties to Plaintiff and class members left after the deduction by the subsidiaries. *Id.* ¶¶ 29–31.

To support that Defendants defrauded Plaintiff and the class members, the SAC includes the following allegations:

> 34. WHO: Defendants failed to disclose and omitted material facts regarding the total foreign streaming revenues collected by its foreign affiliates;
>
> 35. WHAT: Defendants failed to disclose and omitted material facts regarding the total foreign streaming revenues collected by its foreign affiliates as detailed herein and instead only disclosed amounts remaining after imposing an intercompany charge between Defendants and their foreign affiliates. Further, Defendants failed to indicate the true royalty rate being paid to Plaintiff and Class Members. Defendants' omissions of material fact were intentional and made with knowledge as to the total foreign streaming revenues generated by their foreign affiliates. Defendants' omissions were material because Class Members are unable to determine the total foreign streaming revenues generated abroad absent undertaking a lengthy and expensive audit. Defendants actively concealed the total foreign streaming revenues generated by its foreign affiliates from Plaintiff and Class Members;

36. WHEN: Defendants failed to disclose the material facts detailed herein continuously on each royalty statements [sic] issued from the commencement of distribution via foreign streaming until the present. The non-disclosure is ongoing as the statements provide [sic] to Plaintiff and the Class fail to disclose that Defendants' foreign affiliates are withholding royalty revenues and the true royalty being paid in light of that impermissible deduction;

37. WHERE: Defendants' omissions of material fact were made, inter alia, on Plaintiff's and Class Members' royalty statements from UMG, which fail to disclose the intercompany charge and its distortion of the represented royalty rates;

38. HOW: Defendants failed to pay Plaintiff and Class Member's [sic] their fair share of foreign streaming revenues collected by Defendants' foreign affiliates and failed to disclose the material facts detailed herein in their royalty statements; and

39. WHY: Defendants failed to disclose the material facts detailed herein for the express purpose of inducing Plaintiff and Class Members to accept the reduced royalties without having full knowledge of the total foreign streaming revenues that Defendants were withholding. Defendants profited by concealing the total foreign streaming revenues from Plaintiff and Class Members. Defendants knew that Plaintiff and Class Members would be unable to determine the total foreign streaming revenues absent a lengthy and expensive audit since Defendants were the sole entities in possession of the data that would show the harm complained of herein.

*Id.* ¶¶ 34–39.

Plaintiff brings seven claims on behalf of himself and the putative classes: (1) breach of contract; (2) account stated; (3) fraud; (4) violation of California Business & Professions Code section 17200 *et seq.* ("UCL"); (5) accounting; (6) breach of the covenant of good faith and fair dealing; and (7) declaratory relief. *Id.* ¶¶ 52–106.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Averments of fraud are subject to the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). To meet Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

The Court previously dismissed Plaintiff's claims on two grounds. First, the Court dismissed the fraud claims because "Plaintiff include[d] no particularized facts that would allow the Court to determine what fraud occurred, when, and through

what instrument." Order 5 (citing *Cafasso*, 637 F.3d at 1055). Second, the Court dismissed the contract claims because Plaintiff "fail[ed] to identify a bargained-for provision requiring UMG to pay Plaintiff his claimed royalties." *Id.* at 7. Plaintiff's SAC faces the same deficiencies and must be dismissed.

### A. Fraud

Plaintiff once again "includes no particularized facts that would allow the Court to determine what fraud occurred, when, and through what instrument." *Id.* at 5. Plaintiff attaches no contract or fraudulent royalty statement to the SAC, and once again Plaintiff makes no effort to narrow his serious fraud accusations to a reasonably discrete period or individual such that UMG can meaningfully respond. These vague statements do not "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Court thus **GRANTS** the motion to dismiss the fraud claim.

### B. Breach of Contract

Plaintiff still has not pleaded a bargained-for agreement that Defendants breached. Even assuming Defendants are the proper parties to the alleged agreements to pay foreign streaming royalties without deduction, Plaintiff does not "present the material terms and conditions of the contract in writing or in substance." *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *4 (N.D. Cal. Apr. 22, 2013). Plaintiff only presents excerpts of past contracts that do not mention digital streaming. SAC ¶¶ 22–23 nn. 6–9. The breach of contract claim fails for this reason.

Plaintiff also argues that Defendants paying him royalties for foreign streaming reflects an intent to modify the contract. Opp'n 3–4. Modification of a contract requires consideration. *See D.L. Godbey & Sons Constr. Co. v. Deane*, 39 Cal. 2d 429, 431 (1952); *Fairline Ests., Inc. v. Carrico Constr. Co.*, 228 Cal. App. 2d 65, 71 (1964). Plaintiff argues that a change in legal relationship constitutes sufficient consideration. Opp'n 7 (citing *Chi. Title Ins. Co. v. AMZ Ins. Servs., Inc.*, 188 Cal. App. 4th 401, 423 (2010)). Consideration requires both parties to "have assumed some legal obligations." *Chi. Title*, 188 Cal. App. 4th at 423. Plaintiff's SAC points to no new legal obligation he assumed after the 1972 Settlement Agreement. Thus, the purported modification fails for lack of consideration.

Plaintiff finally claims a right to recission of the original contract in the event the Court finds no breach of contract. Opp'n 8–10. But Plaintiff seeks to keep past royalties previously paid to him under his contract with Capitol Records. *See* SAC ¶¶ 6–7, 53–58. Because this is an affirmation of those contracts, Plaintiff cannot seek to rescind them. *Cf. Broad. Music, Inc. v. Davis*, No. CV 10-10089-RGK (FFMx), 2012 WL 13008124, at *6 (C.D. Cal. Mar. 30, 2012) (dismissing claim seeking rescission where claimants affirmed contracts by seeking to retain their benefits).

The Court **GRANTS** the motion to dismiss the breach of contract claim.

### C. Remaining Claims

Every other claim depends on either the fraud allegations or contract provisions Plaintiff failed to identify. SAC ¶ 64 (account stated); *id.* ¶ 88 (UCL); *id.* ¶ 92 (accounting) *id.* ¶ 97 (breach of the implied covenant of good faith and fair dealing); *id.* ¶ 104 (declaratory relief). *Lieblong v. Abella*, 503 F. Supp. 3d 1011, 1022 (D. Haw. 2020) ("A claim for declaratory relief rises or falls with the other claims." (internal quotation marks omitted)); *McAfee v. Francis*, No. 5:11-cv-00821-LHK, 2011 U.S. Dist. LEXIS 83878, at *6–7 (N.D. Cal. Aug. 1, 2011) ("When a common count is used as an alternative way of seeking the same recovery demanded in a specific claim, and is based on the same facts, it does not survive if the underlying claim does not survive." (cleaned up)). Accordingly, the Court **GRANTS** the motion to dismiss as to these claims.

## IV. CONCLUSION

The Court **GRANTS** the motion. The Court determines that granting further leave to amend would be futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where amended complaint failed to cure defects identified in order dismissing prior complaint). The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**