UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MARKS, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UMG RECORDINGS, INC., a Delaware corporation; and CAPITOL RECORDS, LLC,<br><br>Defendants. | Case No. 2-21-cv-04043-MCS-JPR<br><br>**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF Nos. 51, 62, 64)** |

Defendants UMG Recordings, Inc., and Capitol Records, LLC, move for judgment on the pleadings as to Plaintiff David Marks's Third Amended Complaint ("TAC," ECF No. 49). (Mot., ECF No. 62.) Plaintiff opposed the motion, (Opp'n, ECF No. 68), and Defendants replied, (Reply, ECF No. 70). Defendants separately filed a request for judicial notice of documents filed in support of its motion, (RJN, ECF No. 63), and an application to file portions of those documents under seal, (Appl., ECF No. 64). Plaintiff filed objections to the request, (Opp'n RJN, ECF No. 69), and Defendants replied, (Reply RJN, ECF No. 71).The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

1

## I. SEALING APPLICATIONS

The Court previously deferred ruling on Defendants' application to file under seal "Plaintiff's royalty statements, or financial information from Plaintiff's royalty statements[] that Plaintiff contends is confidential" filed in support of its request for judicial notice. (First Appl., ECF No. 51; *see* Order 2, ECF No. 58.) The Court invited Plaintiff, as the party designating the redacted information as confidential, to file a declaration responsive to the application demonstrating whether there are compelling reasons for his royalty information to be sealed. (Order 2.) Plaintiff filed a declaration pursuant to Local Rule 79-5.2.2(b)(i). (First Clark Decl., ECF No. 60.)

Defendants now seek to file under seal the same royalty information in support of its motion for judgment on the pleadings. (Appl.; *compare* First Appl. 2, *with* Appl. 2.) Plaintiff filed a declaration responsive to the application pursuant to Local Rule 79-5.2.2(b)(i). (Second Clark Decl., ECF No. 67.)

There is a presumptive right of public access to court records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Litigants who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that compelling reasons support secrecy. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Here, Plaintiff asks the Court to seal the "dollar amounts of the band's net royalty earnings and Plaintiff's share of the band's royalties for the periods ending June 30, 2022, and December 31, 2022." (First Clark Decl. ¶ 7; Second Clark Decl. ¶ 5; *see also* First Clark Decl. ¶¶ 8–9; Second Clark Decl. ¶¶ 6–7.) While Plaintiff's request is narrow in that he only asks the Court to seal the specified dollar amounts in the underlying documents, he does not provide the Court with any reason why this information should be filed under seal. For instance, Plaintiff cites *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 U.S. Dist. LEXIS 120114, at *7–8 (C.D. Cal. June 17, 2019), which supports the proposition that courts routinely seal "non-public financial, pricing, and strategy information [that] could harm litigants' competitive standing." *Id.* at *7.

2

1  However, Plaintiff does not provide any argument why the dollar amount in royalty
2  statements is akin to the company financial information sealed in *Monster Energy Co.*
3  or any other reason why the public disclosure of this information would be harmful to
4  Plaintiff's competitive standing in the marketplace for recording artists. Absent any
5  compelling reason supporting the need to maintain the secrecy of this information, the
6  Court **DENIES** both sealing applications. Defendants shall file the documents proposed
7  to be sealed in the public record pursuant to Local Rule 79-5.2.2. In the interest of
8  judicial economy, the Court has considered the documents submitted with the sealing
9  applications in its consideration of the motion to dismiss.

## II. REQUEST FOR JUDICIAL NOTICE

Defendants ask the Court to take judicial notice of five documents filed in connection with Defendants' motion for judgment on the pleadings: (1) the original recording contract between Plaintiff and Capitol Records, Inc.; (2) a copy of an amendment to the original 1962 recording contract; (3) a copy of an "Agreement and Release" between Plaintiff and Capitol Records; (4) a copy of Plaintiff's Artist Royalty Statement for the period ended June 30, 2022; and (5) a copy of Plaintiff's Artist Royalty Statement for the period ended December 31, 2022. (RJN 1–2.)

The Court may consider the documents under the incorporation by reference doctrine. "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted). Plaintiff references his contracts with Capitol Records and royalty statements in the TAC. (TAC ¶¶ 4–5, 22–23, 26–27, 45(e).) Plaintiff does not contest the authenticity of the five documents, nor does he contest Defendants' contention that they are central to his claims. Instead, he argues the documents are not fit for judicial notice, (Opp'n RJN 1–2), which is a doctrine "often conflated" with, but distinct from, incorporation by reference, *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052,

1061 (C.D. Cal. 2012); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways."). Notably, the Court previously considered the five documents in connection with a prior motion. (Order 3.) The Court again considers the five documents filed in connection with Defendants' motion for judgment on the pleadings.

### III. BACKGROUND

The Court previously granted Defendants' motion to dismiss Plaintiff's Second Amended Complaint in its entirety. (MTD Order, ECF No. 37; *see* SAC, ECF No. 25.) The Ninth Circuit affirmed this Court's dismissal of all of Plaintiff's claims but one— Plaintiff's claim for declaratory relief. (Mem., ECF No. 44.) Specifically, the Ninth Circuit "reverse[d] the district court's dismissal of the declaratory relief claim to the extent Marks seeks a declaration that the purpose of the written agreement has been frustrated, or a declaration that he is entitled to rescission of the parties' contract." (*Id.* at 11.) The Court directed Plaintiff to file an amended complaint "consistent with the memorandum decision and mandate on the declaratory relief claim only." (Minute Order 1, ECF No. 46.)

Plaintiff subsequently filed the TAC, bringing only a claim for declaratory relief on behalf of himself and the putative class. (TAC ¶¶ 44–47.) According to the TAC, Defendants or their predecessors signed contracts with Plaintiff which granted Defendants "rights to commercially exploit the artistic works of Plaintiff and Class Members in exchange for the ongoing payment of royalties" to Plaintiff and Class Members. (*Id.* ¶ 1 (footnote omitted).) As the market for record sales yielded to the market for digital streaming, "Defendants represented to Plaintiff and Class Members on their written royalty statements that they would be receiving royalty payments for the digital streaming of their works." (*Id.* ¶ 26.) Plaintiff avers it is "unreasonable for Defendants to base Plaintiff's and Class Members' royalties for international streaming off of any figure other than one hundred percent of such revenues." (*Id.* ¶ 28.) Despite

this, Plaintiff argues, Defendants have taken "a percentage off the top of the international revenues earned from streaming sales and bas[ed] Plaintiff's and Class Members' royalty rates on the remainder." (*Id.* ¶ 30.) Plaintiff argues that, if Defendants do not have an ongoing obligation to pay him for digital streaming under the underlying agreements, (*see* RJN Exs. A–B (together, "Agreements")), the Agreements "may be rescinded for failure of consideration and/or frustration of purpose," (TAC ¶ 45(f)), and he seeks "a judicial determination" of his and Class Members' rights and obligations under the Agreements, (*id.* ¶ 47).

Defendants previously filed a motion to dismiss Plaintiff's TAC on the grounds that Plaintiff failed to state a claim for declaratory relief. (Mot. to Dismiss, ECF No. 50.) The Court denied this motion, invoking the law of the case doctrine. (*See generally* Order.) The Court found the circuit panel's memorandum precluded it "from entertaining Defendants' renewed arguments by necessary implication, so the Court will follow the law of the case and decline to dismiss the claim on these grounds." (Order 5 (internal quotation marks omitted).) Pursuant to the Court's order, Defendants filed a post-answer Rule 12(c) motion arguing that an exception to the law of the case doctrine applies. (Mot. 6.)

## IV. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Here, the appropriate analog is Federal Rule of Civil Procedure 12(b)(6), which allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## V. DISCUSSION

Plaintiff requests "[a]n order rescinding the Agreements in the event Defendants are found to have no obligation to share digital streaming revenues with Plaintiff and the Class." (TAC at 16.) In support of this request, he avers that "if Defendants had no obligation to account to [Plaintiff or] Class Members for digital streaming revenues under the Agreements, it would represent a fundamental failure of consideration and a frustration of the Agreements' core purpose, giving rise to rescission claims." (*Id.* ¶ 25.) The Court already found Plaintiff never had a contractual right to digital streaming royalties. (MTD Order 5–6.) The Ninth Circuit similarly found Marks's SAC "failed to plead a valid contract that covers digital streaming royalties." (Mem. 6.) Plaintiff introduced no new facts that challenge this Court or the circuit panel's findings on this issue. (*See generally* TAC.) Therefore, the Court reaffirms its previous finding that Plaintiff is not contractually obligated to receive digital streaming royalties. The only thing left for the Court to decide is whether Plaintiff is entitled to an order from the Court rescinding the Agreements.

///

### A. The Law of the Case Doctrine

As a preliminary matter, the Court finds the law of the case doctrine does not preclude it from ruling on the challenges raised in Defendants' motion. As this Court previously held, (Order 5), "[t]he law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case," *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quoting *Maag v. Wessler*, 993 F.2d 718, 720 n.2 (9th Cir. 1993)). However, "the law of the case acts as a bar only when the issue in question was actually considered and decided by the first court" either expressly or by necessarily implication. *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Moreover, when a court is presented with new evidence, it may reassess the viability of a complaint under Rule 12 without running afoul of the law of the case doctrine. *See Moore v. Wells Fargo Bank, N.A.*, No. 22-cv-07310-AMO, 2023 WL 5538268, at *2 (N.D. Cal. Aug. 28, 2023).

Changed circumstances permit the Court to rule on Defendants' motion notwithstanding the Court's prior reluctance to entertain similar arguments for dismissal given the law of the case. (*See* Order 5–6.) First, Defendants argue Plaintiff presents a new legal theory in his TAC based on California Civil Code section 1689(b)(4), which was not addressed by the circuit panel. (Mot. 9–10.) Plaintiff argues he never cited section 1689(b)(3) and, therefore, the circuit panel's findings pertaining to that section should not be cabined exclusively to that subpart. (Opp'n 11–12.) However, the law of the case doctrine does not foreclose the Court from considering arguments made pursuant to a subsection the circuit panel did not consider. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186–87 (9th Cir. 2001) ("The doctrine applies to the appellate court's explicit decisions as well as those issues decided by necessary implication." (internal quotation marks omitted)). The Court agrees with Defendants and finds the circuit panel's findings pertaining to Civil Code section 1689(b)(3) do not preclude the Court from ruling on a subsequent motion seeking dismissal of a complaint that raises a new rescission theory pursuant to section

1689(b)(4). The two theories are related but distinct. Section 1689(b)(3) supports rescission if there is a complete failure of consideration, whereas section 1689(b)(4) supports rescission if there is a partial but material failure of consideration. Although not explicitly stated in the TAC, Plaintiff made clear from previous briefing on a motion to dismiss the TAC, and the briefing now before the Court, that the parties' dispute "slots perfectly into the context of [section 1689](b)(4)." (Opp'n to Motion to Dismiss 2, ECF No. 54; *see also* Opp'n 17–19). The Ninth Circuit memorandum does not "explicitly or implicitly decide" issues under section 1689(b)(4) and, therefore, the Court is not precluded from assessing the viability of a newly asserted theory of the claim resting on the subsection. *Lujan*, 243 F.3d at 1187.

Second, the Court now has before it the complete set of Agreements between Plaintiff and Capitol Records, which were not part of the record on appeal. (RJN Exs. A–B.) In light of this new material incorporated by reference into the operative pleading, the Court can adjudicate the merits of Defendants' motion without running afoul of the law of the case doctrine. *See Campanelli v. Bockrath*, No. C 93-3038 FMS, 1997 WL 325422, at *4 (N.D. Cal. June 5, 1997) (finding the law of the case doctrine inapplicable to a renewed Rule 12 motion predicated on documents not before the appellate court). Therefore, the Court properly may rule on the merits of Defendants' motion.

### B. Lack of Consideration

Plaintiff avers the Agreements should be rescinded due to a failure of consideration. (TAC ¶ 25.) Section 1689(b)(4) permits rescission of a contract only "[i]f the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause." In other words, section 1689(b)(4) supports rescission of a contract if there is a partial but material failure of consideration. *See Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 840 (9th Cir. 1987). Plaintiff avers the Agreements with Defendants must be rescinded under section 1689(b)(4). (Opp'n 17–18.) Specifically, he argues that the consideration contemplated at the time

8

the parties contracted fails in part because the parties did not account for the advent of digital streaming, and the contract only specifies royalty payments pursuant to the sale of physical records. (*Id.*)

The Agreements only contemplate royalty payments pursuant to the sale of physical records and not the ephemeral streaming thereof. Marks does not contest (nor could he) that he continues to be paid royalties for physical record sales. (*See* RJN Exs. D–E.) Instead, Marks is asking that the Court rescind the Agreements because the advent of digital streaming constitutes "supervening circumstance [that] . . . destroy[ed]" the value of the original consideration "in a manner permissive of rescission." (Opp'n 19.)

Plaintiff has provided the Court with no authority suggesting that there is any failure of consideration in support of the Agreements. And the Court will not find the "contract is . . . rendered voidable because [Marks] is disappointed" with the transformation of the record industry. *See Reliance Fin. Corp. v Miller*, 557 F.2d 674, 681 (9th Cir. 1977). Plaintiff's claim for rescission for lack of consideration fails. The Court **GRANTS** Defendants' motion as to Plaintiff's rescission theory made pursuant to section 1689(b)(4).[1]

### C. Frustration of Purpose

Plaintiff argues the Agreements should be rescinded because the core purpose of the Agreements has been frustrated. (TAC ¶ 25.) Frustration of purpose is "an excuse for nonperformance of a contractual duty." *Lloyd v. Murphy*, 25 Cal. 2d 48, 52 (1944). "Where, after a contract is made, a party's principal purpose is substantially frustrated . . . , his remaining duties to render performance are discharged." Restatement

---

[1] Plaintiff's contention that "the Ninth Circuit already found that Marks had presented a plausible case for rescission in this case" based on his section 1689(b)(4) theory misreads the circuit panel's memorandum, which merely states that "Marks was entitled to plead his rescission- and frustration-based declaratory relief claims in the alternative." (Mem. 10.)

9

(Second) of Contracts § 265. "The excuse of frustration serves to mitigate the costs of disaster, not to provide a means of escape from a contract less profitable than anticipated." *Waegemann v. Montgomery Ward & Co. Inc.*, 713 F.2d 452, 455 (9th Cir. 1983). "Frustration of purpose is an excuse for non-performance, not a cause of action." *Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision–Dir.*, 119 F.3d 1358, 1364 (9th Cir. 1997).

Plaintiff argues that there is a "frustration of the Agreements' core purpose, giving rise to rescission claims." (TAC ¶ 25.) Specifically, he argues the purpose of the Agreements has been frustrated "because the market for record sales (the primary compensable activity under the Agreements) has been almost completely cannibalized by the market for digital streaming." (*Id.*) Plaintiff's frustration theory is the very kind that is prohibited by Ninth Circuit precedent. *See Far W. Fed. Bank, S.B.*, 119 F.3d at 1364; *see also Waegemann*, 713 F.2d at 455. He does not aver, nor do the Agreements suggest, that he is subject to any ongoing obligations under the original contract or the amendment to it, on which his theory necessarily must be predicated. (*See* RJN Ex. A ¶¶ 5, 9; *id.* Ex. B ¶ 3.) Plaintiff's frustration of purpose theory fails as a matter of law. The Court **GRANTS** Defendants' motion as to Plaintiff's request for declaratory relief based on frustration of purpose. Because both theories under which Plaintiff seeks to rescind the contracts fail as a matter of law, his claim must be dismissed.

### D. Leave to Amend

Plaintiff does not request leave to amend his complaint. (*See generally* Opp'n.) Notwithstanding, the Court analyzes whether granting such leave is appropriate here. "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff

has enjoyed four opportunities to request his desired relief. Despite this, he has repeatedly failed to plead a claim on which relief can be granted. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where amended complaint failed to cure defects identified in order dismissing prior complaint). The Court is left with no choice but to believe there are no facts available for Plaintiff to sustain his claims and that granting him leave to amend would be futile. Thus, the Court denies Plaintiff leave to amend. *Sonoma County*, 708 F.3d at 1117.

## VI. CONCLUSION

Defendants' motion for judgment on the pleadings is **GRANTED.** The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

DATED: March 18, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE